IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **WILLIAM SAKI**<br><br>c/o Speech Law LLC<br>Speech Law, LLC<br>4403 Saint Clair Ave, Suite 400<br>Cleveland, OH 44103-1125<br><br>*and*<br><br>**CYRUS MAHDAVI**<br><br>c/o Speech Law LLC<br>Speech Law, LLC<br>4403 Saint Clair Ave, Suite 400<br>Cleveland, OH 44103-1125<br><br>*Plaintiffs,*<br><br>v.<br><br>**CHARLES L. NORMAN**<br><br>1970 West Broad Street<br>Columbus, OH 43223<br><br>*and*<br><br>**ANDY WILSON**<br><br>77 South High Street, 30th Floor<br>Columbus, OH 43215<br><br>*Defendants.* | Case No.: 1:25-cv-01893 |
| **COMPLAINT WITH JURY DEMAND** | |

1.      This is an action under 42 U.S.C. §1983 for legal, declaratory and injunctive relief based on Defendants' violations of Plaintiffs' rights to free speech and equal protection.

2.      Mr. Saki is a citizen of the State of Ohio who sought to place a personalized message expressing a central part of his identity on his license plate.

3.      But because Mr. Saki is not heterosexual, Defendants Charles Norman and Andy Wilson rejected his application.

4.      Mr. Mahdavi is a citizen of the State of Ohio who sought to place a personalized message expressing a central part of his identity on his license plate.

5.      But because Mr. Mahdavi is not a member of one of their preferred religions, Defendants Charles Norman and Andy Wilson rejected his application.

6.      While Defendants will allow drivers to personalize their license plates to communicate countless messages about themselves, they will not allow drivers to personalize their plates to say they are "GAY," even if that statement is a true, neutral fact.

7.      But Defendants will allow drivers to personalize their license plates to communicate that they are "STR8" or "HETERO."

8.      Nor will Defendants allow drivers to personalize their license plates to say they are "MUSLIM," even if that statement is a true, neutral fact.

9.      But Defendants will allow drivers to personalize their license plates to communicate that they are "ATHEIST" or "BAPTIST," or "HINDU."

10.    When Mr. Saki attempted to personalize his license plate, Defendants refused, labeling

the message that a driver is "GAY" to be "Inappropriate / Invalid":



11.    Meanwhile, Defendants will allow personalization when a driver wants to express a

contrary viewpoint. For instance, they have approved and issued license plates reading

"STR8," "BE STR8" and "STR8 PWR."

12.    Defendants likewise advertise license plates reading "NO GAYS," "NO HOMOS" and

"NO FAGS" as "currently available."



13.     When Mr. Mahdavi attempted to personalize his license plate, Defendants refused,

labeling the message that a driver is "MUSLIM" to be "Inappropriate / Invalid":



14.     Meanwhile, Defendants will allow personalization when a driver wants to express a

contrary viewpoint. For instance, they have approved and issued license plates reading

"BAPTIST," "HINDU" and "ATHEIST."

15.     Defendants likewise advertise license plates reading "CATHLIC," "MORMON" and

"DRUID" as "currently available":



16. Defendants' disparate treatment of these messages flows from a standardless and unconstitutional licensing scheme that grants them unbridled discretion in determining which messages to approve or reject.

17. Meanwhile, Defendants continue to enforce that scheme against all other applicants for vanity license plates, prohibiting those applicants from communicating information that Mr. Saki and Mr. Mahdavi wish to receive.

18. Mr. Saki and Mr. Mahdavi have thus been denied their rights to freedom of speech and equal protection as guaranteed by the First Amendment, Fourteenth Amendment and the Ohio Constitution.

## PARTIES

19. Mr. Saki is a citizen and resident of Lakewood, Ohio.

20. Mr. Mahdavi is a citizen and resident of Strongsville, Ohio.

21. Defendant Charles L. Norman is the Registrar of the Ohio BMV. He is charged with administering and enforcing the rules of the Ohio BMV. He is sued in his official and individual capacities.

22. Defendant Andy Wilson is the Director of the Ohio Department of Public Safety, of which the Ohio BMV is a division. He is sued in his official and individual capacities.

## JURISDICTION & VENUE

23. This Court has jurisdiction over this matter under the following five statutes:

   a. 28 U.S.C. §1343, in that this action arises under the United States Constitution;

   b. 28 U.S.C. § 1343 (a)(3), in that it is brought to redress deprivations, under color of State law, of rights, privileges, and immunities secured by the United States Constitution;

c.      28 U.S.C. § 1343 (a)(4), in that its purpose is to secure equitable relief under Acts of Congress, specifically 42 U.S.C. § 1983, providing for the protection of civil rights;

d.      28 U.S.C. § 2201 (a), in that one of the purposes is to secure declaratory relief; and

e.      28 U.S.C. § 2202 (a), in that the Plaintiff is requesting both preliminary and permanent injunctive relief.

24.    Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants are situated in this district, and because all the claims asserted arose within this judicial district.

## FACTS

25.    The BMV is responsible for licensing drivers and vehicles for public highways in Ohio.

26.    Historically, the BMV has licensed vehicles for operation on Ohio's highways using license plates with preprinted combinations of letters and numbers with no particular meaning, assigned to drivers in no particular order.

27.    In 1973, the Ohio General Assembly approved a bill that sought to fund roadside parks by allowing vehicle owners to customize the combinations on their license plates to create messages of their own choosing.

28.    Subject to BMV approval, applicants decide how they want those messages to appear— whether to render them forward or backwards, how to space the words in the message, whether to use conventional spelling, whether to use abbreviations, whether to replace letters with similar-sounding or similar-looking numerals, and so on.

29.    Those messages sometimes communicate nothing more than the owner's name. For example:

a.      The BMV has approved the message "BARB G."

    b.      The BMV has approved the message "DANA A."

    c.      The BMV has approved the message "LORIE  K."

    d.      The BMV has approved the message "TOM P."

30.    Those messages sometimes consist of endorsements of the applicant's goods or services. For example:

    a.      The BMV has approved the message "GRASS" for an applicant who reported running a lawn-care business.

    b.      The BMV has approved the message "FC KR8TM" for an applicant who reported running a business called First Choice Kratom.

    c.      The BMV has approved the message "NFG TOW" for a trailer owned by an applicant who reported running a business called NFG Racing.

    d.      The BMV has approved the message "MCM AF" for an applicant who reported running a business called Mid-Century Modern As F**k Dayton.

31.    Other messages are more cryptic, and sometimes completely indecipherable. For example:

    a.      The BMV has approved the message "014587."

    b.      The BMV has approved the message "CBSP."

    c.      The BMV has approved the message "M7XQR12."

    d.      The BMV has approved the message "ZYAYYDS."

32.    The state does not purport to endorse the messages it approves for vanity plates.

33.    The state does not endorse all the messages it approves for vanity plates.

34.    For example, the messages it approves are often contradictory. For instance:

    a.      The BMV has approved the message "GO BUCKS" but also "GO BLUE."

b.      The BMV has approved the message "GODLY" but also "GODLESS."

c.      The BMV has approved the message "LUV DIRT" but also "H8 DIRT."

d.      The BMV has approved the messages "VAXN8" and "VAXPLZ"; but also "ANTIVAX" and "NOVAX."

35.    In Ohio, the motoring public generally recognizes those messages as coming from the vehicle owner, indicating that the driver—and not the government—supports or opposes those messages.

36.    Defendants do not take the position that people generally believe the messages on vanity plates are messages from the State of Ohio.

37.    When the program first launched, the BMV was aware of and anticipating the likelihood that some vehicle owners would seek license plates with messages that others would find objectionable.

38.    Despite those concerns, the BMV did not promulgate rules governing what messages it would and would not approve on vanity plates.

39.    Instead, the BMV assembled a panel of employees with no special expertise or qualifications, and tasked them with operating as government censors, responsible for reviewing applications for vanity plates and deciding whether they should be approved or rejected.

40.    In doing so, the BMV took no official position on what messages it would approve or reject.

41.    Instead, it left its panel to develop its own criteria over time.

## The *Zucco* settlement

42.    Under that regime, the BMV gave its panel unbridled discretion to censor messages based on its subjective assessments of what combinations of letters and/or numbers were

"words, connotations or abbreviations of a profane, obscene or vulgar nature" and

"words, connotations or abbreviations that are ethnic or controversial in origin or

character, and which are judged by the BMV to be offensive, disparaging or socially

insensitive."

43. That scheme was the subject of a previous lawsuit, *Zucco v. Caltrider*, No. 2:01-cv-01270 (S.D. Ohio).

44. In that case, the BMV approved but later revoked the plaintiff's application for a plate reading "RDRAGE," based on its conclusion that "road rage kills people."

45. Because that level of unfettered discretion over speech violates the First Amendment, the BMV settled that lawsuit with an agreement to approve the plaintiff's application and issue his requested license plate.

46. The settlement also required the BMV to adopt narrower guidelines, known as the "Special Plate Screening Guidelines," for evaluating applications.

47. An authentic copy of the Special Plate Screening Guidelines is attached as Ex. 56.

48. Under the Special Plate Screening Guidelines, the BMV would reject plates as "inappropriate" only if they contained "words, combinations and/or phrases (in any language or when read either frontward or backward)" that:

    a.    are profane (i.e, swearwords or expletives)

    b.    are obscene

    c.    are sexually explicit

    d.    are scatological (i.e., having to do with fecal excrement)

    e.    are so offensive that they could reasonably be expected to provoke a violent response from viewers without additional comment

      f.      advocate immediate lawlessness

      g.      advocate lawless activities.

49.     Under the *Zucco* settlement, "any future employees of the BMV and the Ohio Department of Public Safety retain[s] the right to modify the Guidelines as they may deem appropriate."

50.     Since the *Zucco* case closed, BMV employees have repeatedly modified the Guidelines.

51.     The BMV now uses different rules at different times.

52.     It sometimes rejects messages for violating the Special Plate Screening Guidelines.

53.     It sometimes rejects messages not because they *contain* words that are obscene, sexually explicit, or scatological, but merely because they "can be interpreted as" obscene, sexually explicit, or scatological.

54.     It sometimes rejects messages "due to a potential perception of inappropriateness."

55.     And it often simply defers to the tastes of random bozos on the Internet. For instance:

      a.      Although an applicant wanted "PLSKYS" placed on a "Stop Bullying" license plate to mean "Please Keep Youth Safe," BMV censors rejected it because people on UrbanDictionary.com gave more thumbs-ups to the meaning "Please Kill Yourself."

      b.      And although "NIU BI" means "awesome" in Chinese, a BMV censor rejected it because some random person on UrbanDictionary.com with no known language expertise had translated it as "fucking awesome."

56.     Under these rules, there is nothing to prevent the BMV from prohibiting any message it doesn't like.

57.     Some people do not want to be exposed to license plates with messages the BMV rejects.

58.  Mr. Saki and Mr. Mahdavi do.

**The BMV censorship regime gives no notice of what messages are prohibited.**

59.  Under its current scheme, the BMV allows its censors to run amok, censoring messages not because they violate the Special Plate Screening Guidelines, but because they violate the censors' subjective criteria.

60.  It rejected "BOSS BSH" because a BMV censor believed someone could perceive "BSH" as a shortened form of "bish," which the censor believed someone could in turn perceive as slang for "bitch."

61.  It rejected "COVDHX" because a BMV censor believed someone could perceive it as "COVID hoax."

62.  It rejected "NFG." The applicant sought to remind fellow drivers to "never forget God," but a BMV censor fretted that someone could perceive it as meaning "no fucking good."

63.  It rejected "DRIVE TF." The applicant wished to communicate that the vehicle was primarily used to transport their children, whose initials were T and F, but a BMV censor worried that someone might instead perceive it as meaning "drive the fuck."

64.  It rejected "SL4YER." A driver wanted to communicate that he was a fan of the heavy-metal band Slayer, but a BMV censor worried that someone could perceive it as meaning "pussy slayer," which could in turn be perceived as sexually explicit.

65.  It rejected "WHT R1CE," "LA NEGRA," "POLACK," "DAMICK," and "GYLTY" because BMV censors believed they could provoke Asians, African-Americans, Polish people, Irish people, and police officers to violence.

66.  It rejected "TIGSUX" because a BMV censor believed it could be perceived as meaning "Tigers Suck," which could in turn provoke violence from fans of the Massillon High School football team.

67. It rejected "SHAG SW" because a BMV censor believed someone could perceive it as meaning "shag wagon," and in turn perceive "shag wagon" as sexually explicit.

68. It rejected "XXXTRA" because a BMV censor believed someone could perceive "XXX" as a reference to the rating for pornographic films.

69. It rejected "NUK U" because a BMV censor believed someone could perceive it as meaning "nuke you" and in turn be provoked to detonate a nuclear bomb.

70. It rejected "SUKTDRY." While conceding that the applicant operated a carpet-cleaning business, a BMV censor believed that message could be perceived as sexually explicit.

71. It rejected "TNSAF." While the driver expressed the desire to evoke the Canadian spirit—memorialized as "True North, strong and free" in the Canadian national anthem—a BMV censor worried that the message could also be perceived as "True North strong as fuck."

72. It rejected "BICHOTA." While conceding that *bichota* is a Latinization of "big shot," a BMV censor believed someone could perceive it as meaning "bitch."

73. It rejected "370455 V" because a BMV censor believed that it could be perceived as "asshole."

74. It rejected "XKXX" because a BMV censor believed it "may be affiliated with the Ku Klux Klan."

75. It rejected "EFORTY6." Although the plate was requested for a BMW E46, a BMV censor believed it could be perceived as meaning "Fuck Joe Biden."

76. None of these messages actually violate the Special Plate Screening Guidelines.

77. The BMV itself is not on notice of what messages it will and will not approve.

78. Instead, its censors approve some messages, but only subject to a heckler's veto, at which point the BMV recalls the license plate. For instance:

    a. A driver was able to register "GYLTY" in 2013, but BMV censors retroactively rejected it in 2021 after someone complained that it had been paired with an "Ohio Cops" specialty plate, rendering it "derogatory" to the police.

    b. Another applicant was able to register "ILHAS TZ," but BMV censors retroactively rejected it after someone complained about it.

    c. Another applicant was able to register "BUY HASH" in 2021, but BMV censors retroactively rejected after someone complained about it.

**The BMV censorship regime encourages arbitrary enforcement.**

79. Under its current scheme, the BMV permits arbitrary enforcement of the criteria it purports to apply, rejecting some messages as violations of its rules while approving virtually identical messages that could not be approved if the rules were being applied consistently.

80. BMV censors approved "MRS YAOI," but they rejected the same driver's request for "YAOIPLZ" because they believed someone could perceive it as referring to *yaoi*, a genre of Japanese literature featuring same-sex romantic relationships.

81. BMV censors rejected "LMAO GAS" and "LMAO EPA" because they believed "LMAO" could be perceived as meaning "laugh my ass off," but they approved "LMAOFF."

82. BMV censors rejected "AXEHOLE" as profane, but they approved "AXE HOLE."

83. BMV censors rejected "REDRUM8" as advocating immediate lawlessness, but they approved "REDRUM6."

84. BMV censors approved "SKEET" but rejected "JIZZ," although they believed both referred to human ejaculate.

85. BMV censors rejected "EATCHIT," but they approved "EAT CHI T."

86. And there are several messages that BMV censors have at one time denied *and* at another time approved, including "2FASTFU," "BAMAWAP," "BOFADZ," "FILTHYB," "FK7," "GASFML," "HIT," "LLIGMA," "LOLICON," "LTLCKR," "PHOQ2," "PKLPMP," "SHAGNN," and "STUKATS."

87. There is no rational basis for approving "MRS YAOI" while rejecting "YAOIPLZ."

88. There is no rational basis for approving "LMAOFF" while rejecting "LMAO GAS."

89. There is no rational basis for approving "AXE HOLE" while rejecting "AXEHOLE."

90. There is no rational basis for approving "REDRUM6" while rejecting "REDRUM8."

91. There is no rational basis for approving "SKEET" while rejecting "JIZZ."

92. There is no rational basis for approving "EAT CHI T" while rejecting "EATCHIT."

93. "MRS YAOI" does not violate the Special Plate Screening Guidelines.

94. "LMAOFF" does not violate the Special Plate Screening Guidelines.

95. "AXE HOLE" does not violate the Special Plate Screening Guidelines.

96. "REDRUM6" does not violate the Special Plate Screening Guidelines.

97. "SKEET" does not violate the Special Plate Screening Guidelines.

98. "EAT CHI T" does not violate the Special Plate Screening Guidelines.

99. "YAOIPLZ" does not violate the Special Plate Screening Guidelines.

100. "LMAO GAS" does not violate the Special Plate Screening Guidelines.

101. "AXEHOLE" does not violate the Special Plate Screening Guidelines.

102. "REDRUM8" does not violate the Special Plate Screening Guidelines.

103.    "JIZZ" does not violate the Special Plate Screening Guidelines.

104.    "EATCHIT" does not violate the Special Plate Screening Guidelines.

**The BMV censorship regime encourages discriminatory enforcement.**

105.    Under its current scheme, the BMV permits discriminatory enforcement of the criteria it

purports to apply.

106.    Indeed, the BMV's website will not even process applications for license plates unless

applicants disclose the meaning of their message so its censors can evaluate the message

based on the ideas or opinions it conveys.

107.    BMV censors rejected "H8OHIO," "IH8OHIO," and "H8 MY ST8" because they

indicated the applicants hate Ohio, but they approved "LUV OH" and "LUVN OH."

108.    None of these messages actually violate the Special Plate Screening Guidelines.

109.    The BMV has issued license plates reading "WHITE" and "ASIAN," but its website

automatically rejects attempts to register "NEGRO."

110.    The BMV has issued license plates reading "AMERICN," "MEXICAN," and "ASIAN,"

but its website automatically rejects attempts to register "RUSSIAN."

111.    The BMV has issued a license plate reading "STR8," but its website automatically rejects

attempts to register "GAY" or "LESBIAN."

112.    The BMV has issued a license plate reading "CIS," but its website automatically rejects

attempts to register "QUEER."

113.    The BMV has issued license plates reading "ATHEIST," "BAPTIST," and "HINDU,"

but its website automatically rejects attempts to register "JEW" or "MUSLIM."

114.    There is no rational basis for approving "WHITE" and "ASIAN" while rejecting

"NEGRO."

115. There is no rational basis for approving "AMERICN," "MEXICAN," and "ASIAN" while rejecting "RUSSIAN."

116. There is no rational basis for approving "STR8" while rejecting "GAY" or "LESBIAN."

117. There is no rational basis for approving "CIS" while rejecting "QUEER."

118. There is no rational basis for approving "ATHEIST," "BAPTIST," and "HINDU" while rejecting "JEW" or "MUSLIM."

119. "WHITE" does not violate the Special Plate Screening Guidelines.

120. "ASIAN" does not violate the Special Plate Screening Guidelines.

121. "AMERICN" does not violate the Special Plate Screening Guidelines.

122. "MEXICAN" does not violate the Special Plate Screening Guidelines.

123. "ASIAN" does not violate the Special Plate Screening Guidelines.

124. "STR8" does not violate the Special Plate Screening Guidelines.

125. "CIS" does not violate the Special Plate Screening Guidelines.

126. "ATHEIST" does not violate the Special Plate Screening Guidelines.

127. "BAPTIST" does not violate the Special Plate Screening Guidelines.

128. "HINDU" does not violate the Special Plate Screening Guidelines.

129. "NEGRO" does not violate the Special Plate Screening Guidelines.

130. "RUSSIAN" does not violate the Special Plate Screening Guidelines.

131. "GAY" does not violate the Special Plate Screening Guidelines.

132. "LESBIAN" does not violate the Special Plate Screening Guidelines.

133. "QUEER" does not violate the Special Plate Screening Guidelines.

134. "JEW" does not violate the Special Plate Screening Guidelines.

135. "MUSLIM" does not violate the Special Plate Screening Guidelines.

**Defendants reject Mr. Saki's vanity plate based on homophobic animus**

136. Mr. Saki likewise ran afoul of the BMV's sweeping censorship regime when he applied for his license plate.

137. In advance of National Coming Out Day, he attempted to apply for a plate reading "GAY," but the BMV automatically rejected it as "Inappropriate / Invalid."

138. The BMV provided no further rationale for rejecting the message.

139. He attempted to communicate the same message in other ways, but the BMV likewise rejected them.

140. The BMV rejected "HOMO" as "Inappropriate / Invalid."

141. The BMV rejected "QUEER" as "Inappropriate / Invalid."

142. The BMV rejected "FAG" as "Inappropriate / Invalid."

143. The BMV rejected "FAGGOT" as "Inappropriate / Invalid."

144. The BMV rejected "F46 LGB" as "Inappropriate / Invalid."

145. The string of characters "F46 LGB" has no objective meaning.

146. Most people who see it attach no meaning to it whatsoever.

147. To Mr. Saki, it means "Fag Love, Gavin and Billy," a reference to his affection for his partner of three years.

148. According to Defendants, "one plausible interpretation" of that string is that it means "Fuck Joe Biden, Let's Go Brandon," which they consider an expression of support for President Trump.

149. That is not Mr. Saki's meaning.

150. Mr. Saki is a supporter of Joe Biden and opposed to President Trump's agenda.

151. Defendants say another "plausible interpretation" of that string is that it means "Fag Lesbian Gay Bisexual."

152.    None of those words violate the Special Screening Guidelines.

153.    Nonetheless, the BMV will not allow drivers to put any of those words on a vanity license plate.

154.    But the BMV permits people to communicate the opposing viewpoint on their license plates. For instance:

   a.    It advertises a plate reading "NO GAYS" as "currently available."

   b.    It advertises a plate reading "NO HOMOS" as "currently available."

   c.    It advertises a plate reading "NO FAGS" as "currently available."

155.    In denying Mr. Saki's application, the BMV violated the Special Plate Screening Guidelines.

156.    Defendants' conduct has injured and continues to injure Mr. Saki.

157.    He has suffered economic and emotional injuries, and he has been injured by the loss of the opportunity to spread his message.

**Defendants reject Mr. Mahdavi's vanity plate based on Islamophobic animus**

158.    Mr. Mahdavi likewise ran afoul of the BMV's sweeping censorship regime when he applied for his license plate.

159.    When he attempted to apply for a plate reading "MUSLIM," the BMV automatically rejected it as "Inappropriate / Invalid."

160.    The BMV provided no further rationale for rejecting the message.

161.    It permits people of other faiths to advertise their religion on their license plates. For instance:

   a.    "AMISH" is a currently issued license plate.

   b.    "ATHEIST" is a currently issued license plate.

   c.    "BAPTIST" is a currently issued license plate.

    d.      "HINDU" is a currently issued license plate.

    e.      "JAIN" is a currently issued license plate.

    f.      "PAGAN" is a currently issued license plate.

    g.      "SIKH" is a currently issued license plate.

    h.      "WICCAN" is a currently issued plate.

162.    Likewise, the BMV expresses no reservations about issuing plates for adherents of other religions:

    a.      It advertises a plate reading "BAHAI" as "currently available."

    b.      It advertises a plate reading "CATHLIC" as "currently available."

    c.      It advertises a plate reading "DRUID" as "currently available."

    d.      It advertises a plate reading "MORMON" as "currently available."

163.    In denying Mr. Mahdavi's application, the BMV violated the Special Plate Screening Guidelines.

164.    Defendants' conduct has injured and continues to injure Mr. Mahdavi.

165.    He has suffered economic and emotional injuries, and he has been injured by the loss of the opportunity to spread his message.

## CLAIM 1
### FIRST AMENDMENT VIOLATION, 42 U.S.C. § 1983—
### THE GUIDELINES ARE FACIALLY UNCONSTITUTIONAL

166.    Plaintiffs re-incorporate all the preceding allegations.

167.    The Special Plate Screening Guidelines are Defendants' official policy for reviewing vanity license plates.

168.    The Special Plate Screening Guidelines empower Defendant Norman to determine which combinations will or will not be displayed on the official license plates of the State.

169.    The Special Plate Screening Guidelines are unconstitutionally vague and overbroad.

170.   The Special Plate Screening Guidelines fail to give a person of ordinary intelligence fair notice of what messages are forbidden.

171.   The Special Plate Screening Guidelines authorize and encourage arbitrary and discriminatory enforcement.

172.   The Special Plate Screening Guidelines are overbroad, prohibiting a substantial amount of protected speech in relation to their clearly lawful applications.

173.   The Special Plate Screening Guidelines are an unconstitutional prior restraint on Plaintiffs' speech and the speech of others that he wishes to receive.

174.   The BMV's vague and shifting standards ignore well-established constitutional protections under the First and Fourteenth Amendments to the United States Constitution.

## CLAIM 2
### FIRST AMENDMENT VIOLATION, 42 U.S.C. § 1983—
### THE GUIDELINES ARE UNCONSTITUTIONAL AS APPLIED TO MR. SAKI

175.   Plaintiffs re-incorporate all the preceding allegations.

176.   Defendants have unconstitutionally applied the Special Plate Screening Guidelines to Plaintiffs' messages.

177.   For instance, Defendants do not take the position that "GAY" is profane in any language, read either frontward or backwards.

178.   Defendants do not take the position that "GAY" is obscene in any language, read either frontward or backwards.

179.   Defendants do not take the position that "GAY" is sexually explicit in any language, read either frontward or backwards.

180.   Defendants do not take the position that "GAY" is scatological in any language, read either frontward or backwards.

181. Defendants do not take the position that "GAY" is so offensive in any language, read either frontward or backwards, that it could reasonably be expected to provoke a violent response from viewers without additional comment.

182. Defendants do not take the position that "GAY" advocates immediate lawlessness in any language, read either frontward or backwards.

183. Defendants do not take the position that "GAY" advocates lawless activities in any language, read either frontward or backwards.

184. Nor do Defendants take the position that "MUSLIM" is profane in any language, read either frontward or backwards.

185. Defendants do not take the position that "MUSLIM" is obscene in any language, read either frontward or backwards.

186. Defendants do not take the position that "MUSLIM" is sexually explicit in any language, read either frontward or backwards.

187. Defendants do not take the position that "MUSLIM" is scatological in any language, read either frontward or backwards.

188. Defendants do not take the position that "MUSLIM" is so offensive in any language, read either frontward or backwards, that it could reasonably be expected to provoke a violent response from viewers without additional comment.

189. Defendants do not take the position that "MUSLIM" advocates immediate lawlessness in any language, read either frontward or backwards.

190. Defendants do not take the position that "MUSLIM" advocates lawless activities in any language, read either frontward or backwards.

191.   Likewise, Plaintiffs' chosen messages do not fall outside the protection of the First Amendment.

192.   Defendants do not take the position that "GAY" is advocacy intended and likely to incite imminent lawless action.

193.   Defendants do not take the position that "GAY" is obscene.

194.   Defendants do not take the position that "GAY" is defamatory.

195.   Defendants do not take the position that "GAY" is speech integral to criminal conduct.

196.   Defendants do not take the position that "GAY" is fighting words.

197.   Defendants do not take the position that "GAY" is child pornography.

198.   Defendants do not take the position that "GAY" is fraudulent.

199.   Defendants do not take the position that "GAY" is a true threat.

200.   Defendants do not take the position that "GAY" presents some grave and imminent threat the government has the power to prevent.

201.   Nor do Defendants take the position that "MUSLIM" is advocacy intended and likely to incite imminent lawless action.

202.   Defendants do not take the position that "MUSLIM" is obscene.

203.   Defendants do not take the position that "MUSLIM" is defamatory.

204.   Defendants do not take the position that "MUSLIM" is speech integral to criminal conduct.

205.   Defendants do not take the position that "MUSLIM" is fighting words.

206.   Defendants do not take the position that "MUSLIM" is child pornography.

207.   Defendants do not take the position that "MUSLIM" is fraudulent.

208.   Defendants do not take the position that "MUSLIM" is a true threat.

209.   Defendants do not take the position that "MUSLIM" presents some grave and imminent threat the government has the power to prevent.

210.   No substantial or compelling governmental interest exists for censoring Plaintiffs' messages.

211.   No governmental interest in proscribing Plaintiffs' messages outweighs their First Amendment right to communicate those messages.

### CLAIM 3
### EQUAL PROTECTION VIOLATION, 42 U.S.C. § 1983

212.   Plaintiffs re-incorporate all the preceding allegations.

213.   Defendants routinely receive applications for vanity plates from people who wish to express facts about themselves.

214.   When those applicants wish to express viewpoints that Defendants do not disapprove of, Defendants typically approve those applications.

215.   But Defendants refuse to issue those plates to people like Mr. Saki who wish to express the fact that they are not heterosexual by labeling themselves "GAY," or using similar language.

216.   Defendants likewise refuse to issue those plates to people like Mr. Mahdavi who wish to express the fact that they are not Christian by labeling themselves "MUSLIM."

217.   Defendants' disparate treatment of these classes of applicants burdens Plaintiffs' fundamental rights.

218.   Defendants' disparate treatment of these classes of applicants has no rational basis.

219.   Defendants' disparate treatment of these classes of applicants does not advance any legitimate, important, or compelling governmental interest.

## CLAIM 4
### CIVIL LIABILITY FOR CRIMINAL ACTS, OHIO REV. CODE § 2307.60

220.   Plaintiffs re-incorporate all the preceding allegations.

221.   Under Ohio Rev. Code § 2307.60 (A)(1), "Anyone injured in person or property by a criminal act has, and may recover full damages in, a civil action," including attorneys' fees and punitive damages.

222.   Under Ohio Rev. Code § 2921.45, it is a criminal act for any "public servant, under color of the public servant's office, employment, or authority," to "knowingly deprive, or conspire or attempt to deprive any person of a constitutional or statutory right."

223.   By rejecting Plaintiffs' applications, Defendants knowingly deprived them of their rights under the First and Fourteenth Amendments.

### JURY DEMAND

224.   Plaintiffs demand a trial by jury.

### PRAYER FOR RELIEF

Plaintiffs therefore request that the Court:

A.   Declare that the Special Plate Screening Guidelines are unconstitutionally vague and overbroad, and thus unconstitutional on their face;

B.   Declare that the Special Plate Screening Guidelines, as applied, violate Plaintiffs' freedom of speech under the First Amendment to the United States Constitution and Article I of the Ohio State Constitution;

C.   Enter a temporary restraining order, a preliminary injunction, and a permanent injunction barring Defendants from enforcing the Special Plate Screening Guidelines;

D.   Enter a temporary restraining order, a preliminary injunction, and a permanent injunction ordering Defendants to process and approve Plaintiffs' applications;

E.   Award Plaintiffs damages;

F.   Award Plaintiffs their attorney fees pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. 54,

G.   Award Plaintiffs their costs;

H.   Grant any further relief that the Court deems proper.

Respectfully submitted,

*/s/Brian D. Bardwell*
Brian D. Bardwell (0098423)
Speech Law, LLC
4403 Saint Clair Ave, Suite 400
Cleveland, OH 44103-1125
216-912-2195 Phone/Fax
brian.bardwell@speech.law
*Attorney for Plaintiffs William Saki and Cyrus Mahdavi*